RECEIVED
IN ALEXANDRIA, LA

JUL 2 0 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CCN MANAGED CARE, INC.** | : | **DOCKET NO. 06-519** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **DR. FAYEZ SHAMIEH, AMC, ET AL** | : | **MAGISTRATE JUDGE HILL** |

## MEMORANDUM RULING

Before the Court is "Defendants' Motion to Compel Arbitration" (doc. #56) wherein the mover seeks to compel arbitration of all claims Defendants may have concerning alleged under payments of medical bills for payments made which utilized a discount under Provider Agreements between Defendants and CCN Managed Care, Inc. ("CCN"). Additionally, mover seeks an order to either stay or dismiss all claims in this litigation pending the arbitration. Also before the Court is CCN's motion for summary judgment (doc. #50) wherein the mover maintains that it is entitled to summary judgment on the grounds that the CCN Provider Agreements are valid and enforceable as a matter of law, and that such Agreements create no possibility for casting CCN in liability to Dr. Gunderson, LCMH, or any other healthcare provider under the terms of the Louisiana Any Willing Provider Act[1] because the CCN Provider Agreements are "direct contracts" specifically exempted from the Act under Louisiana Revised Statute 40:2203.1 A, and because an agreement to discount medical services rendered to workers' compensation patients at rates below the Louisiana Fee Schedule for workers' compensation is permissible and enforceable as a matter of law.

---

[1] La. R.S. 40:2203, *et seq.*

## FACTUAL STATEMENT

For a recitation of the facts in this case, see the factual statement in the Memorandum Ruling dated July 7, 2006 (doc. #18).

## LAW AND ANALYSIS

For obvious reasons, the motion to compel arbitration will be considered first.

*Motion to compel arbitration*

Defendants in this action seek to enforce the terms of an arbitration clause contained in Provider Agreements between Defendants and CCN. Defendants maintain that the arbitration clauses are applicable to all the claims asserted in the disputed claims for compensation filed with the Louisiana Office of Workers' Compensation and any other court. On or about May 24, 2007, Defendants demanded arbitration by letter which CCN declined on or about May 31, 2007.

Arbitration agreements are governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* The Federal Arbitration Act provides a "strong federal policy in favor of arbitration"[2] and establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability.[3]

---

[2]  *Moses H. Cone Memorial Hospital v. Mercury Construction,* 460 U.S. 1, 103 S.Ct. 927 (1983).

[3]  *Dickson v. Heinold Securities, Inc.,* 661 F.2d 638, 643(CA7 1981); *Wick v. Atlantic Marine, Inc.,* 605 F.2d 166, 168 (CA5 1979); *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH,* 585 F.2d 39, 43-45 (CA3 1978); *Hanes Corp. v. Millard,* 174 U.S.App.D.C. 253, 266, 531 F.2d 585, 598 (1976); *Acevedo Maldonado v. PPG Industries, Inc.,* 514 F.2d 614, 616-617 (CA1 1975); *Germany v. River Terminal R.Co.,* 477 F.2d 546, 547 (CA6 1973); *Coenen v. R.W. Pressprich & Co.,* 453 F.2d 1209, 1211-1212 (CA2); *Hart v. Orion Insurance Co.,* 453 F.2d 1358, 1360-1361 (CA10 1971).

2

CCN maintains that Defendants have waived their right to arbitration by filing numerous lawsuits on the same issues, arising out of the same contracts. CCN cites *Subway Equipment Leasing Corp. v. Forte,*[4] to support its position that Defendants have waived their right to arbitration because they invoked the judicial process to the detriment of CCN. To invoke the judicial process "a party must have litigated the claim that the party now proposes to arbitrate. . .[t]he party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration."[5]

CCN argues that Defendants have clearly and unequivocally invoked the judicial process on numerous occasions attempting to litigate the exact same claims and/or issues that they now seek to arbitrate. CCN points out that Defendants in this case are the same plaintiffs that filed suit against CCN in state court in *Shamieh v. American Interstate Ins. Co.*[6] CCN maintains that the issues are exactly the same. After the *Shamieh* suit was removed to federal court and before Defendants filed an answer, Plaintiffs in that case voluntarily dismissed CCN along with numerous other defendants. Even though CCN filed the instant litigation, it was in direct response to having been named a defendant in the *Shamieh* litigation. CCN complains that Defendants have filed a countless number of other lawsuits in Louisiana state courts and the Louisiana Office of Workers' Compensation ("OWC") and such cases are also actively litigating the same issues.

In *Subway,* the Fifth Circuit held that in addition to demonstrating that the waiving party

---

[4]   169 F.3d 324, 326 (5th Cir. 1999)("[w]aiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.")

[5]   *Subway,* 169 F.3d at 328-29.

[6]   Civil Action No. 2005-1844, 14th Judicial District Court.

invoked the judicial process, the party asserting waiver must show that it was prejudiced. "[F]or purposes of a waiver of an arbitration agreement, 'prejudice . . . refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.'"[7] Ultimately, "the question of what constitutes a waiver of the right of arbitration depends on the facts of each case."[8]

Three factors are particularly relevant when determining whether a party has been prejudiced in the context of a waiver of arbitration; (1) cost and expense already expended by the party asserting the waiver as a result of having to litigate the claims which are now being claimed to be arbitrable, (2) the delay in requesting arbitration, and (3) any discovery or disclosure in the legal proceeding related to the arbitrable claims.[9]  With respect to the requirement of demonstrating prejudice, the Fifth Circuit has held that:

> [w]hen one party reveals a disinclination to resort to arbitration on any phase of a lawsuit involving all parties, those parties are prejudiced by being forced to bear the expenses of a trial . . . . Arbitration is designed to avoid this very expense. Substantially invoking the litigation machinery qualifies as the kind of prejudice . . . that is the essence of waiver.[10]

CCN submits that it has expended over $110,000 in costs and fees in this case and at a minimum, CCN has expended over $202,000 litigating the claims that Defendants initially sought to resolve through litigation.  Furthermore, CCN asserts that it was a was a significant participator in the removal of the *Shamieh* case to federal court.  To buttress their position that CCN has been

---

[7] *Subway,* 169 F.3d at 327.

[8] *Tenneco Resins, Inc. v. Davy Int'l, AG,* 770 F.2d 416, 420 (5th Cir. 1985).

[9] *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159-1162 (5th Cir. 1986).

[10] *E.C. Ernst, Inc. v. Manhattan Constr. Co. of Texas,* 559 F.2d 268, 269 (5th Cir. 1977).

prejudiced, CCN points out that Defendants delayed in filing the motion to compel[11] and conducted discovery in other cases  that relate to this case that they would not otherwise be entitled to in arbitration.

In response, Defendants submit that First Health filed a motion to compel arbitration of any claims concerning discounts taken pursuant to its wholly owned subsidiary, the CCN network.[12] Hence, Defendants maintain that the arbitration clause is enforceable.

The court finds that the judicial process was invoked when Defendants chose to name CCN as a defendant in state court and litigate the same issues that are the subject of this lawsuit.  CCN has also established that it has been prejudiced by the expenses that it has incurred in both the *Shamieh* case and the instant case.  Accordingly, the motion to compel arbitration will be denied.

*Motion for summary judgment*

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[13] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[14]   A dispute about a

---

[11]  This suit was filed on March 28, 2006.  All proceedings were stayed between July 7, 2006 and December 21, 2007 – approximately 6 months.

[12]  First Health later chose not to pursue the motion.

[13]  Fed. R.Civ. P. 56(c).

[14]  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

5

material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[15] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[16] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[17] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[18] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[19] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[20]

## LAW AND ANALYSIS

CCN maintains that it is entitled to summary judgment in its favor on the grounds that the CCN Provider Agreements are valid and enforceable as a matter of law and that such Agreements create no possibility for casting CCN in liability to Dr. Gunderson, LCMH, or any other healthcare

---

[15] *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999).

[16] *Vera v. Tue,* 73 F.3d 604, 607 (5th Cir. 1996).

[17] *Anderson,* 477 U.S. at 249.

[18] *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

[19] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

[20] *Anderson,* 477 U.S. at 249-50.

provider under the terms of the Louisiana Any Willing Provider Act ("AWPA").[21]  CCN argues that the Provider Agreements are "direct contracts" specifically exempted from the AWPA under Louisiana Revised Statute 40:2203.1(A), and an agreement to discount medical services rendered to workers' compensation patients at rates below the Louisiana Fee Schedule for workers' compensation is permissible and enforceable as a matter of law.

*Is the AWPA applicable to workers' compensation claims*

CCN maintains that the AWPA was not intended to apply to claims made pursuant to the Louisiana Workers Compensation Act ("LWCA"), but was intended to apply to group health plans. CCN argues that the entire AWPA does not apply to workers' compensation claims who have utilized a PPO network because the notice, payment and penalty provisions are incompatible.

In support of its position, CCN argues that the (1) LWCA is a self-contained Act and provides the exclusive remedy for workers who suffer on-the-job injuries,[22] (2) the Provider or Payor Notice Requirement in the LWCA (La. R.S. 23:1201(E)) is diametrically opposed to the Payor or Provider Notice Requirement in the AWPA, (La. R.S. 40:2203.1(B)(5)), and (3) the negotiated alternative rates of payment concept of the AWPA (La. R.S.22:250.32, 22:250.33, and 22:250.34) and its penalty provisions are predicated on evaluating Fair Market Value which is inconsistent with the fixed fee schedule approach under the LWCA (La. R.S. 23:1201(E)).  CCN points out the differences in both the AWPA and the LWCA's penalty provisions and payment and notice requirements.  Thus, CCN argues that a workers' compensation claim which has utilized a PPO

---

[21]  La. R.S. 40:2203, *et seq.*

[22]  The LWCA provides procedural guidelines as well as substantive remedies and penalties for a health care provider's action to recover unreimbursed medical expenses.

network would be subject to both the LWCA and the AWPA, and because these two Acts have inconsistent and/or incompatible notice and payment requirements, and penalty provisions, the AWPA was not intended to apply to such claims.

Defendants argue that CCN's position lacks merit citing Louisiana Revised Statute 40:2203.1(A) in pertinent part as follows:

### Prohibition of certain practices by preferred provider organizations

A. Except as otherwise provided in this Subsection, the requirements of this Section shall apply to *all preferred provider organization agreements that are applicable to medical services* rendered in this state and to group purchasers as defined in this Part. . . . (emphasis added)

Defendants argue that if the Legislature had intended for the AWPA not apply to workers' compensation claims that had utilized a PPO network, it could have limited the scope of the notice requirements of Louisiana Revised Statute 40:2203.1 to apply to group health PPO's only.

CCN cites several examples to illustrate the alleged incompatibility of the two Acts. Payments under PPO agreements covered by the PPO Act "shall be subject to the standards for claims submission and timely payment according to the provisions of Part VI-D of Chapter 1 of Title 22 of the Louisiana Revised Statutes of 1950."[23] Part VI-D is entitled "Standards for Health Insurance Coverage." "Health Insurance Coverage" is defined as follows:

(5) "Health insurance coverage" means benefits consisting of medical care provided directly, through insurance or reimbursement, or otherwise and including items and services paid for as medical care under any hospital or medical service policy or certificate, hospital or medical service plan contract, preferred provider organization agreement, or health maintenance organization contract offered by a health insurance issuer. *However, "health insurance coverage" shall not include benefits due under Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950 [Workers'*

---

[23]  La. R.S. 40:2203.1(E).

*Compensation (§ § 23:1291 to End].* " (emphasis added)[24]

The claims submission and provisions found in Part VI-D of Title 22 differ from the claims submission and payment provisions that govern workers' compensation claims.  For instance, non-electronic claims mandate payment within forty-five (45) days,[25] and electronic claims mandate payment within twenty-five (25) days.[26]  The time period for payment under the LWCA mandate payment within sixty (60) days.[27]  Thus, CCN argues that a workers' compensation payor might comply with La. R.S. 23:1201(E) by making payment within 60 days, but be in violation of La. R.S. 22:250.32, 22:250. 33 and 22.250.34 resulting in that payor being subject to the penalties imposed under La. R.S. 22:250.37 by the Commissioner of Insurance.  CCN notes that the Commissioner may impose such penalties against "any *health insurance issuer* ... not in full compliance with the requirement of this Part."[28]  However, the statute provides no mechanism by which the Commissioner may impose similar penalties against a workers' compensation insurer or payor.

The Court agrees that the payment provisions do not apply to workers' compensation claims because La. R.S. 22.250.31 expressly disclaims these claims in its definition of health insurance coverage.  However, that does not support CCN's position that the entire AWPA does not apply.

CCN next argues that the notice provisions of the AWPA do not apply to a workers'

---

[24] La. R.S. 22:250.31.

[25] La. R.S. 22:250.32.

[26] La. R.S. 22:250.33.

[27] La. R.S. 23:1201(E).

[28] La. R.S.  22:250.37(A)(emphasis added).

9

compensation claim that has utilized a PPO network.  In support of its position, CCN argues that there is also an inconsistency in the AWPA and LWCA notice provisions. Louisiana Revised Statute 40.2203.1(B)(5) [AWPA] provides that "written notice shall be required by any entity accessing an existing group purchaser's contractual agreement or agreements at least thirty days prior to accessing services through a participating provider under such agreement or agreements." Louisiana Revised Statute 23:1201(E) provides that "[m]edical benefits payable under this Chapter [LWCA] shall be paid within sixty days after the employer or insurer receives written notice thereof."  However, the notice requirements in the AWPA serve a different purpose than the notice requirements in the LWCA. The purpose of the notice requirement of the AWPA (La. R.S. 40:2203.1(B)(5)) is to notify a provider in advance that if service is rendered to a patient of a particular payor, payment will be discounted per the PPO network agreement.  The purpose of the notice requirement in the LWCA (La. R.S. 23:1201(E)) is to start the 60 day time period in which a payor who has rendered services to an injured worker must submit payment without penalty.

CCN maintains that the AWPA does not apply to workers' compensation claims because the alternative rates for payment concept of the Act and its penalty provision are predicated on fair market value which is inconsistent with the fixed fee schedule approach under the LWCA.  CCN supports its conclusions by arguing that the methodologies found in the respective statutory schemes for calculating penalties for essentially the same dereliction – improper payment of a provider's medical bills – are diverse.  For instance, CCN argues that the AWPA penalty provisions allow penalties "of double the *fair market value* of the medical services provided, but in no event less than the greater of fifty dollars per day of noncompliance or two thousand dollars. . . " (emphasis added). CCN then contends that the LWCA  penalty for nonpayment or underpayment of medical benefits

10

due under the LWCA are calculated in a materially different manner from the penalties available under the AWPA – "failure to provide payment . . . shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid . . . ." Hence, CCN contends that because the penalty statutes are divergent, the AWPA was not intended to apply to workers' compensation claims.

First, CCN failed to provide the Court with the statute citation in the AWPA that it is referring to in its brief regarding penalties. Thus, after reading the entire Act, the Court presumes that CCN is referring to Louisiana Revised Statute 40:2203.1 G.[29]  If that presumption is correct, what CCN has failed to recognize is that the AWPA penalty provision it cites does not apply to underpayments, but only applies to Subsections A, B, C, D, or F (not subsection E regarding timing of payments) of Louisiana Revised Statute 40:2203.1 which refers to requirements other than non-payment or underpayment of medical benefits to providers. Furthermore, subsection E of Louisiana Revised Statute 40:2203.1 expressly provides that Part VI-D of Chapter 1 of Title 22 of the Louisiana Revised Statutes of 1950 sets the standards for claims submissions and timely payments and as discussed above, workers' compensation claims are expressly excluded.

As noted and argued by Defendants, the statute fails to expressly limit the scope of the notice

---

[29] Subsection G of the statute provides the following:

Failure to comply with the provisions of Subsection A, B, C, D, or F of this Section shall subject a group purchaser to damages payable to the provider of double the fair market value of the medical services provided, but in no event less than the greater of fifty dollars per day of noncompliance or two thousand dollars, together with attorney fees to be determined by the court. A provider may institute this action in any court of competent jurisdiction.

11

requirements for PPO's. CCN provides nothing to persuade the Court that the entire AWPA or specifically Louisiana Revised Statute 40:2203.1(B)(5) does not apply to workers' compensation claims that have utilized a PPO network. Thus, the Court finds no inconsistency or express disclaimer that would mandate that the notice requirements of the AWPA do not apply to the LWCA claims. In sum, the Court concludes that the penalty provisions of the LWCA applies to the timing of payments or underpayments of workers' compensation claims that have utilized a PPO network because Louisiana Revised Statute 22:250.31 expressly excludes benefits due under Chapter 10 of Title 23 (the LWCA), but the notice requirements of the AWPA, specifically, Louisiana Revised Statute 40:2203.1 applies to workers' compensation claims that have utilized PPO networks.

*Are CCN's direct contracts with Defendants exempted from the provisions of the AWPA?*

In the *Shamieh* litigation, Defendants (plaintiffs in the *Shamieh* litigation) alleged that defendant, CCN, violated the AWPA by failing to provide either a benefit card or other written notice to providers prior to it accessing the provider's contractual PPO network discounts. CCN maintains that because it has a direct contract with the provider (defendants in the instant litigation) that allow for such discounts, it is exempt from the notice requirements. Louisiana Revised Statute 40:2203.1 provides the following:

> A. Except as otherwise provided in this Subsection, the requirements of this Section shall apply to all preferred provider organization agreements that are applicable to medical services rendered in this state and to group purchasers as defined in this Part. ***The provisions of this Section shall not apply to a group purchaser when providing health benefits through its own network or direct provider agreements or to such agreements of a group purchaser.***

Defendants argue that the "direct contract" exemption of the AWPA does not apply to CCN because the exemption only applies to a group purchaser "when providing health benefits" through

its own network or direct provider agreements.[30]  As the parties are aware, this Court has already

ruled on the issue of the "direct contract" exemption in the Memorandum Ruling dated February 15,

2006 in *Liberty Mutual, et al v. Gunderson, et al.*[31]  In the *Liberty Mutual* case this Court rejected

defendants' argument and made the following analysis and conclusion:

> Gunderson and LCMH argue that because First Health does not provide health
> benefits through its own network – instead, these benefits were provided by Liberty
> Mutual - then the exemption does not apply to the Provider Agreements.  Likewise,
> Gunderson and LCMH also argue that because Liberty Mutual utilized someone else's
> network – First Health's – and Liberty Mutual did not have a direct agreement with
> either Gunderson or LCMH, the exemption does not apply.  We disagree.
>
> The purpose of the PPO statutes is to control the rising costs of providing quality
> health care benefits.[32]  Louisiana courts have long held that a "statute should be
> construed so as to produce a reasonable result."[33]  "The function of the courts is to
> interpret the laws so as to give them the meaning which the lawmakers obviously
> intended them to have and not to construe them so as to give them absurd or ridiculous
> meanings."[34]
>
> A "group purchaser" is defined as "an organization or entity which contracts
> with providers for the purpose of establishing a preferred provider organization."[35]  First
> Health is a group purchaser.  The PPO Contract between Liberty Mutual and First Health
> is an "agreement of [a] group purchaser [ *i.e.* First Health].  Accordingly, the language
> of the statute is clear that the notice requirements do not apply to group purchasers when
> providing health benefits through their own network or ***to such agreements of group
> purchaser.***  This is the logical and reasonable interpretation of the statute and is in line
> with the Legislature's intent to contain escalating health care costs.  Furthermore, and

---

[30]  Defendants' opposition, p. 7.

[31]  Docket no. 2:04-cv-02405, doc. #95.

[32]  La. R.S. 40:2201.

[33]  *Bradford v. Louisiana Public Service Comm'n.,* 189 La. 327, 338, 179 So. 442 (1938);
*Louisiana Municipal Ass'n. v. State,* 893 So.2d 809, 864 (La. 2005).

[34]  *Webb v. Parish Council of Parish of East Baton Rouge,* 217 La. 926, 47 So.2d 718,
720 (1950); *Savoie v. Rubin,* 2001-3275 (La. 6/21/02), 820 So.2d 486, 488.

[35]  La. R.S. 40:2202(3).

more significantly, this was the expectation of the parties when they entered into the PPO Contract and Provider Agreements.

We are further persuaded by First Health's arguments concerning the intent of the legislature that the notice provision at issue here applies to a "silent PPO" where there is no direct contract between the provider and the PPO. For example, when a PPO (such as First Health) makes an assignment to another PPO network. It is in those instances that the notice requirement provisions of Louisiana Revised Statute § 40 2203.1 become applicable because there is no direct contract between the provider and the PPO assignee.[36]

Defendants maintain that CCN is not entitled to summary judgment in its favor because there

are genuine issues of material facts as to the following:

(1) England-Masse Chiropractic Clinic does not and did not exist when this lawsuit was filed.

(2) Fayez K. Shamieh, MD does not have a contract with CCN and does not belong to the Christus Southwestern Louisiana PHO.

(3) Lynn E. Foret, MD and Kevin Gorin, MD had no direct contract with CCN.

(4) Lake Charles Memorial Hospital terminated its contract with CCN on January 9, 2004 and CCN discounts were unlawfully taken after the CCN PPO contract was terminated.

(5) Lake Charles Memorial Hospital-PHO never provided any medical treatment to anyone and has never submitted any bills or had any bills discounted through a CCN PPO network contract.

(6) R. Dale Bernauer, MD was subject to CCN discounting by numerous different payors who did not pay the medical bills within 30 days in violation of Section 2.03 of his contract and CCN violated Sections 6.01, 6.03, and 6.04 of their contract with Dr. Bernauer.

(7) CCN and their payors have violated numerous terms of the CCN PPO Network agreements with respect to other defendants.

(8) A number of health care providers (including Dr. Kenneth Eastman, Dr. Carol Beutler, Dr. David Duhon, Dr. Don England, Christus St. Paul and Southwest Louisiana PHO) have been made subject to this motion, but are not defendants in this case.

(9) CCN failed to establish that a single payor who accessed CCN's contract and took CCN discounts from the named defendants actually had any contractual right to do so.

---

[36] *Liberty Mutual, et al v. Gunderson, et al,* Docket No. 2:04-cv-02405,Memorandum Ruling, (doc. #95), pp. 6-8.

(10) None of the defendants received a benefit card or prior notice from CCN or any of its payors showing the patients membership in the CCN PPO prior to services being rendered, as required by Louisiana state law and/or the CCN contract.

(11) Each of the named defendants specifically deny the allegations made by CCN that they charged less than the Louisiana Fee Schedule.

(12) Contrary to CCN's allegations that PPO cards are not feasible to workers' compensation, not only are they feasible, PPO cards are actually being used by at least one payor client of First Health (who owns CCN).

(13) Defendants are willing to arbitrate this matter as required by the contract, but CCN refuses.

Defendants submit the affidavit of Dr. Brian Heller,[37] as an expert in the field of managed care and PPO's to explain how PPO's work and the exemption contained in Louisiana Revised Statute 40:2203.1(A).  Dr. Heller is allegedly an experienced health insurance/managed care executive who has developed, managed and contracted with PPO's.  Dr. Heller explains that in workers' compensation PPO's, a patient is not liable for any portion of the bill and has no financial incentive to choose the in network provider over the out of network provider.  He further declares that silent PPO's result from the use of PPO contractual arrangements (and accessing the discounts contained therein) by entities other than those with whom the provider contracted.  In other words, a PPO network that contracted with a provider would allow a variety of entities to access the contracted rates without the provider knowing that the patient belonged to the PPO with whom the provider had a contract.  These types of entities typically include third party administrators, bill re-pricing/review companies, bill review software companies, and other PPO networks.  Hence, Heller declares that the purpose of the notice requirements in the AWPA is to require some form of advance notice or consent to the PPO discounts by the provider before any discounts can be taken.  In Louisiana, the PPO statute requires either a benefit card identifying the PPO, or 30 day prior written

---

[37] Defendants' exhibit L.

15

notice identifying the PPO before services are rendered.[38]

Louisiana Revised Statute 40:2203.1 A provides the following:

> Except as otherwise provided in this Subsection, the requirements of this Section shall apply to all preferred provider organization agreements that are applicable to medical services rendered in this state and to group purchasers as defined in this Part.  The provisions of this Section shall not apply to a group purchaser when providing health benefits through its own network or direct provider agreements or to such agreements of a group purchaser.

CCN argues that because it is a group purchaser that provides health benefits through its own network or to such agreements of a group purchaser, it is entitled to the exemption in Louisiana Revised Statute 40:2203.1(A).  Defendants maintain that summary judgment is not proper because all but one defendant denies that CCN has a direct contract with it.

*Lake Charles Memorial Hospital*

Defendants' counsel asserts that LCMH had a contract with CCN but it terminated on January 9, 2004  and suggests that CCN took discounts that were unlawful after the CCN PPO contract was terminated.  CCN submits summary judgment evidence that establishes that CCN and LCMH agreed to continue their relationship through a new contract as of December 2004.[39] Defendants have not disputed this.

*Dr. Fayez Shamieh*

In their opposition, Defendants' counsel asserts that Dr. Shamieh does not have a contract with CCN.[40]  CCN first argues that Shamieh's own affidavit contradicts counsel's assertion. The

---

[38]  Heller affidavit, p. 3.

[39]  CCN exhibit J.

[40]  Defendants' Opposition, p.2.

16

affidavit states that "CCN is a network that has allowed other entities to access a contract the Affiant

agreed to as a member of a PHO."[41] CCN also submits summary judgment evidence that establishes

that Dr. Shamieh agreed to be bound by the terms of the contract negotiated and executed by the

Lake Charles Memorial Hospital PHO and CCN by the following:

> __X__ I wish to become a participating physicians (sic) in the contract with
> Community Care Network.  I agree to abide by all the terms and conditions of that
> agreement that apply to me and intend to be legally bound thereby.[42]

Finally, CCN argues that Dr. Shamieh filed suit against CCN in the *Shamieh* litigation and

invoked a contractual right to arbitration in this case relying on the CCN contract.  The Court

concludes that Dr. Shamieh has a direct contract with CCN through the Lake Charles Memorial

Hospital–PHO ("LCMH-PHO") contract and his agreement to be bound by the terms of the CCN

contract.

*Dr. Lynn Foret and Dr. Kevin Gorin*

Defendants' counsel asserts that Dr. Foret and Gorin had no direct contract of any kind with

CCN. Again, these doctors' contractual relationship with CCN is derived through the LCMH-PHO

and their agreement to be bound to the terms of the CCN contract by signing the Lake Charles

Physician Hospital Organization Contract Participation Election Form[43] submitted by CCN as

summary judgment evidence.  Drs. Foret and Gorin's election forms leave no doubt that they also

had a direct contract with CCN through the LCMH-PHO agreement and agreed to be bound by the

---

[41]  Shamieh Affidavit, p. 1, attached to Defendants' Opposition.

[42]  Lake Charles Physician Hospital Organization Contract Participation Election Form,
CCN's exhibit F attached to CCN's opposition.

[43]  CCN Exhibits G and H attached t Reply Memorandum.

17

terms of the CCN contract.

*Lake Charles Memorial Hospital-PHO ("LCMH-PHO")*

Defendants assert that there is a genuine issue of material fact regarding LCMH-PHO because it never provided any medical treatment to anyone and, as a result, has never submitted any bills or had any bills discounted through the CCN PPO network contract.  CCN submits summary judgment evidence and maintains that the Professional Care-Provider Agreement between LCMH-PPO and CCN references LCMH-PHO as a "Provider."[44]  Provider is defined in the Agreement as "the provider group composed of members listed in Exhibit B, attached hereto and incorporated herein."[45]  The LCMH-PHO contract recites that it is a contract between CCN and the LCMH-PHO members listed on Exhibit B to the contract.  Thus, CCN argues that this Agreement can be regarded as a direct contract between its members (Shamieh, Gorin, and Foret) and CCN, the result of which the exemption in 40:2203.1 A applies.  The Court concludes that the LCMH-PHO agreement combined with the election forms signed by Drs. Shamieh, Gorin and Foret, agreeing to participate in the CCN network and be bound  by its terms is a direct contract between these doctors and CCN.  Whether or not the LCMH-PHO provided any medical treatment to anyone or had any bills discounted is entirely irrelevant.

*Dr. R. Dale Bernauer, MD, CCN and payors violation of contract*

Defendants concedes that Dr. Bernauer currently has a direct contract with CCN, but that he along with other payors were subject to CCN discounting by numerous different payors who did not pay the medical bills within 30 days in violation of the CCN contract and also failed to comply with

---

[44]  CCN contract with LCMH-PHO, CCN exhibit D, p.1.

[45]  *Id.*

18

other sections of the contract.  For purposes of this motion for summary judgment, these arguments are irrelevant and do not create a genuine issue of material fact for trial.

*Can health care providers, Dr. Eastman, Dr. Carol Beutler, Dr. David Duhon, Dr. England, Christus St. Paul and Southwest Louisiana PHO who are not defendants in this case be made subject to this motion for summary judgment?*

Defendants' counsel complains that CCN is seeking a judgment against certain health care providers who have not been made defendants in this case, specifically referring to Drs. Eastman, Beutler and England.  Defendants' counsel argues that the England-Masse Clinic partnership does not exist and did not exist at the time the lawsuit was filed.  CCN submits summary judgment evidence to establish that the England-Masse Clinic is a partnership, the partners being Dr. Carol Beutler, Dr. John Masse and Dr. Donald England.[46]  Dr. Eastman is not a partner, but served on the Clinic's professional staff of chiropractors.

Louisiana Civil Code article 2834 provides that liquidation of a partnership occurs in the same manner as a corporation.  Only a court order or the liquidator's signing of a final certificate of dissolution will mark the end of the partnership's existence.[47]  Appointment of a liquidator merely renders the liquidator himself as the proper party for service of an action against the partnership.[48]  CCN has submitted a Stipulated Order Appointing Liquidator[49] which discloses the identity of the partners, but it does not establish a final liquidation of the England-Masse Clinic.  Defendants' counsel has submitted no evidence to dispute this or for this Court to conclude that the partnership

---

[46]  CCN exhibit A.

[47]  La. R.S. 12:148.

[48]  La.C.Civ. P. art. 740.

[49]  CCN exhibit A.

does not exist and did not exist at the time the lawsuit was filed. However, CCN admits that it did not serve the proper agent for the partnership – the liquidator.

Federal Rule Civil Procedure 12(g) provides that a party who makes a motion under Rule 12 but who "omits therefrom any defense or objection then available to him which this rule (Rule 12) permits to be raised by motion," may not thereafter "make a motion based on the defense or objection so omitted, . . ." CCN argues that because the England-Masse Clinic has already appeared without claiming that it has been improperly joined or named and also has filed along with other defendants, a motion pursuant to Rule 12, these defendants have waived their right to assert this defense. The Court finds that Drs. Beutler and England, as partners in the England Masse Clinic partnership, which has not been dissolved, have waived their right to assert that they been improperly joined or named and are proper parties to this lawsuit. However, the Court has no legal authority to make Dr. Eastman a party to this lawsuit.

CCN also seeks to make those claims after the cessation of business by the England-Masse Clinic partnership subject to the instant lawsuit. CCN requests that Drs. Beutler, Dr. John Masse, and Dr. Donald England be substituted as successors to the England-Masse Clinic pursuant to Rule 25 of the Federal Rules of Civil Procedure. CCN claims that each of these persons, either individually, through the England-Masse Clinic or through a PHO, contracted with CCN to allow discounts to be applied to medical bills for treatment rendered to occupationally ill or injured workers. CCN argues that these individuals are represented by the same counsel that has been appearing in this litigation on behalf of the England-Masse Clinic, and their contracts with CCN are before the Court in connection with the instant summary judgment motion. Rule 25 provides in pertinent part the following:

**Substitution of Parties**
* * *

(C) **Transfer of Interest.**  In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.  Service of the motion shall be made as provided in subdivision (a) of this rule.

The Court will not render a judgment against these defendants for claims made after cessation of the business of the England-Masse Clinic until a proper motion has been made and granted pursuant to Rule 25.

*Other miscellaneous issues*

Defendants assert the following alleged issues to create a genuine issue of material fact: (1) CCN has failed to establish that one single payor who accessed CCN's contract and took CCN discounts from the named defendants actually had any contractual right to do so, (2)  none of the defendants received prior notice from CCN or its payors prior to services being rendered, (3) each named defendant denies the allegations made by CCN that they were charged less than the Louisiana Fee Schedule, (4) contrary to CCN's allegations that PPO cards are not feasible in workers' compensation claims, PPO cards are being used by at least one payor of First Health, and (5) defendants are willing to arbitrate.  CCN is seeking summary judgment regarding whether (1) taking PPO discounts from the workers' compensation bills is a violation of the LWCA, and (2) CCN is entitled to the exemption found in Louisiana Revised Statue 40:2203.1 A.  These particular issues are not relevant to the legal issues currently before this Court on summary judgment, nor do they create a genuine issue of material of fact.

Defendants' attempt to create a genuine issue of material for trial has failed.  For the reasons set forth here and in the *Liberty Mutual* decision, the CCN Provider Agreements are "direct

21

contracts" specifically exempted from the Act under Louisiana Revised Statute 40:2203.1 A.

*Are the CCN contracts permissible and enforceable as a matter of law?*

Defendants maintain that summary judgment is not appropriate because "[A]ll of the judges, including six of the twelve judges of the Louisiana Third Circuit Court of Appeal have concluded that a "PPO's contracting (below the Louisiana Fee Schedule) in general, <u>does</u> run afoul of LSA-R.S. 23:1033 prohibition against contracting around the LWCA"[50] citing *Beutler England Clinic (Marie Kershaw) v. Mermentau Rice, Inc."*[51] Defendants then contend that this court is "bound to make an *Erie guess* and attempt to rule as the highest Louisiana State Court would rule."[52] The Court has read and studied Third Circuit opinion in *Kershaw.* The only issue before the appellate court was whether or not the Office of Workers' Compensation lacked subject matter jurisdiction to consider a provider's claim for unpaid amounts after a third-party administrator discounted a provider's bills.[53] The conclusion drawn by the honorable Judge Jimmie Peters in his concurring opinion, with all due respect, was not an issue before the court. Because the issue was not on appeal before the court, we can only assume that this issue was not properly briefed by the parties. The Court also notes that Judge Peters failed to make a complete analysis of the LWCA before making his conclusion. Therefore, the Court does not find Judge Peters' concurring opinion helpful or persuasive.

In the *Liberty Mutual* decision this Court made the following analysis and conclusion:

---

[50] Defendants' opposition, p. 9.

[51] 931 So.2d 553 (La.App. 3rd Cir. 2006).

[52] Defendants opposition, p. 9.

[53] *Kershaw,* 931 So.2d 553.

22

Gunderson and LCMH maintain that Louisiana's Workers' Compensation Laws expressly prohibit the use of any contract which "operates to relieve an employer, in whole or in part, of any liability" created by the Louisiana Workers' Compensation Act.[54]   Hence, they argue that the discount provision in the Provider Agreements runs afoul of the direct prohibition of such contracts in Louisiana Revised Statute 23:1033, and cannot be used by a Louisiana workers' compensation carrier when paying a workers' compensation bill in the State of Louisiana.  We disagree.

Louisiana Revised Statute 23:1033 prohibits a contract that operates "to relieve the *employer*, in whole or in part, from any liability created by this Chapter .... " (Emphasis added).  In *Jones v. General Motors Corp.,*[55] the Louisiana Supreme Court recognized that an agreement between employer and employee may waive or alter "statutorily established rights" so long as it is "clear and unambiguous."  The Court also acknowledged that the Louisiana Workers' Compensation Act " is designed to benefit the injured worker" and read Louisiana Revised Statute 23:1033 to impose a "limitation on a contract which relieves the *employer* of *compensation* liability."[56]  The Court does not find that the Provider Agreements have relieved the employer of its compensation liability, and we will not expand the literal interpretation of this statute.

In further support of this finding is the clear language of Louisiana Revised Statute 23:1034.2(E) which provides the following:

> Nothing in this Section shall prevent a health care provider from charging a fee for such care, services, treatment, drugs, or supplies that is *less than* the reimbursement established by the reimbursement schedule. (Emphasis added)

Furthermore, Louisiana Revised Statute 23:1203(B) provides further support for discounted or lower rates of reimbursement:

> The obligation of the employer to furnish such care, . . . is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, . . .  as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 *or the actual charge made for the service, whichever is less.* (emphasis added)

In summary, the Court concludes that there are no prohibitions in the Louisiana Workers' Compensation laws that prevent a provider from agreeing to charge and receive discounted rates for the services they provide to occupationally ill or injured

---

[54]  La. R.S. 23:1033.

[55]  2003-1766 (La. 4/30/04), 871 So.2d 1109.

[56]  *Id.*

23

workers.

For the reasons set forth here and in the *Liberty Mutual* decision, the Court will enter summary judgment in CCN's favor on the issue of whether the PPO discounts are valid and enforceable under the LWCA.

## CONCLUSION

Based on the foregoing, the motion to compel filed by Defendants will be denied; the motion for summary judgment filed by CCN Managed Care, Inc. will be granted and judgment will be rendered declaring that the CCN Provider Agreements are valid and enforceable as a matter of law and the CCN Provider Agreements are "direct contracts" specifically exempted from the notice requirements of the AWPA pursuant to Louisiana Revised Statute 40:2203.1 A.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 26th day of July, 2007.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

24